## In re Practice of Architecture. No. 1

BARCO, Deputy Attorney General, March 5, 1940.—In your memorandum of September 13, 1939, you asked for an interpretation of certain sections hereinafter stated of the Act of June 27, 1939, P. L. 1188.

Your first question is "whether the board [The State Board of Examiners of Architects] is restricted to the amount of moneys allocated by the Department of Public Instruction for the biennium, or whether the board can, under the provisions of the act, incur such expenses as

shall be necessary, not exceeding the sums received by the Commonwealth by fees for examinations, registrations, and renewals".

The original and basic Act of July 12, 1919, P. L. 933, as amended, governs the licensing and practice of architects. Section 1 of the Act of 1939, supra, is the latest amending act of section 3 of the original act herein referred to, and the second paragraph of this section as amended reads as follows:

"The said board shall be charged with the duty of enforcing the provisions of this act, *and may incur such expenses as shall be necessary, not exceeding, however, the sums received by the Commonwealth by fees provided for herein for examinations, registrations and renewals,* all of which shall be paid, upon the warrant of the Auditor General approved by the State Treasurer, out of the funds in the State Treasury duly appropriated for such purposes." (Italics supplied.)

It can readily be seen that this section of the act is controlling on this question asked by you.

Article XIII, sec. 1301, of The Administrative Code of April 9, 1929, P. L. 177, 71 PS §351, provides:

". . . the Department of Public Instruction shall continue to exercise the powers and perform the duties by law vested in and imposed upon the said department . . . *the former Bureau of Professional Education thereof,* and the Superintendent of Public Instruction." (Italics supplied.)

Article II, sec. 201, of The Administrative Code, supra, as amended by the Act of May 10, 1939, P. L. 101, sec. 1, 71 PS §61, reads as follows:

"The executive and administrative work of this Commonwealth shall be performed by the Executive Department, consisting of the Governor . . . and Superintendent of Public Instruction . . . by the following administrative departments . . . Department of Public Instruction . . ."

The provisions of section 202 of The Administrative Code, supra, as last amended by the Act of June 6, 1939, P. L. 250, sec. 1, 71 PS §62, read as follows:

"The following boards . . . are hereby placed and made departmental administrative boards . . . as the case may be, in the respective administrative departments . . . as follows. . . . In the Department of Public Instruction. . . . State Board of Examiners of Architects . . .".

Section 1310 of the code, as last amended by the Act of June 21, 1937, P. L. 1865, 71 PS §360, contains the following language:

*"The professional examining boards within the Department of Public Instruction* shall, respectively, exercise the rights and powers, and perform the duties, by law vested in and imposed upon them: *Provided, however, That all certificates and official documents of such examining boards shall be issued by the Department of Public Instruction,* but may be signed by the members of the appropriate board, or any of them, as determined by such board. . . .

"The State Board of Examiners of Architects shall continue to exercise the powers, and perform the duties, by law vested in and imposed upon the said board" (italics supplied).

Under section 1 of the Act of April 1, 1925, P. L. 111, 71 PS §1061, it is provided:

"That the Department of Public Instruction be and hereby is authorized and directed annually . . . to fix the fees to be charged by the several professional examining boards within said department during the ensuing fiscal year."

Section 2 of the Act of 1925, supra, states:

*"The Department shall estimate the proper cost of administering and enforcing such act or acts of Assembly during* the ensuing fiscal year . . ." (italics supplied).

In connection with these various statutes hereinbefore cited, we also desire to bring to your attention section 2

of the Act of April 1, 1925, P. L. 112, 71 PS §1064, which reads as follows:

"From and after the effective date of this act all such professional examining boards within the Department of Public Instruction shall pay into the general fund of the State Treasury all fees, fines, and other income received by them under the provisions of the several acts of Assembly authorizing the collection of such fees and fines and other income."

Section 3 of this same act provides for the abolition of any special funds that the various professional examining boards possessed, so that thereafter the only funds at the disposal of the various professional examining boards would be those that were appropriated to them by the legislature or allocated to them by the Superintendent of the Department of Public Instruction of which they were made a part. These acts clearly demonstrate that the intention of the legislature was to abolish the special funds, which at one time were especially allocated or set aside to the various individual professional examining boards, among which was included the State Board of Examiners of Architects.

The General Appropriation Act of June 27, 1939, page 60, made, inter alia, an appropriation to the Department of Public Instruction as follows:

"*For the payment of salaries, wages, or other compensation* of a deputy, *members, and other employes; for the payment of general expenses, supplies, printing, and equipment necessary for the proper conduct of the work of the Department of Public Instruction with respect to professional education and licensure and the professional examining boards* and advisory committees *within the department, the sum of five hundred thousand dollars ($500,000)* : Provided, That no part of this appropriation shall be expended for any purpose other than the work of the department with respect to the certification of teachers, professional education and licensure, and the profes-

sional examining boards and advisory committees within the department." (Italics supplied.)

The following paragraph of the same act provides for a special appropriation to the State Board of Pharmacy, a professional examining board of similar nature and under the same classification as the State Board of Examiners of Architects. It is to be noticed, however, that a study of the 1939 Appropriation Acts reveals no similar or special appropriation to the State Board of Examiners of Architects nor to any other professional examining board. The conclusion, therefore, is inescapable that any appropriation that the legislature made or contemplated for the State Board of Examiners of Architects was of necessity included in the $500,000 appropriation to the Department of Public Instruction referred to in the section of the act just cited.

In interpreting paragraph 2 of section 3 of the Act of July 12, 1919, P. L. 933, as amended, we are therefore, forced to the conclusion that any appropriation to the State Board of Examiners of Architects must be a sum allocated out of said appropriation of $500,000 by the Superintendent of Public Instruction as head of that department. The superintendent is limited in making the allocation or appropriation to the board in that he *cannot exceed in amount* the total of the fees received by the Commonwealth through the board for examinations, registrations, and renewals of certificates.

The biennium budget ending May 31, 1941, which was adopted and is now in force, reveals that the sum of $7,940 was allocated by the Superintendent of Public Instruction to the State Board of Examiners of Architects. Of this appropriation, the amount of $4,002 was allocated for the year ending May 31, 1940, with the remainder for the following year. Therefore, in no case is the Board of Examiners of Architects entitled legally to expend more than the sum total of these amounts allocated to it for this biennium, unless the Superintendent of Public Instruction should make reallocations during

the biennium. Although the Superintendent of Public Instruction is authorized by law to reallocate to the board a greater sum, it must not exceed the total of the fees which are collected by the board under the provisions of the Act of 1919.

In this connection, sight should not be lost of the fact that The Fiscal Code of April 9, 1929, P. L. 343, sec. 302, 72 PS §302, provides that moneys received by the State Board of Examiners of Architects are to be paid into the State Treasury. It is to be noted that no provision was made by this act for payment into any special fund for the board of these fees received. However, The Administrative Code of April 9, 1929, P. L. 177, as amended, sec. 604, 71 PS §224, makes provision for the Department of Public Instruction, and for the board, to prepare and submit an estimation to the Governor of the amount of money required to carry on the activity of the board. After approval of that estimation by the Governor, any further appropriation or reallocation to the board during the biennium must first be approved by the Governor, even though consented to by the Superintendent of Public Instruction.

Your second question is specifically directed to paragraph five of section 13 of the Act of 1919, supra, as amended by the Act of June 27, 1939, P. L. 1188, which reads as follows:

"Nothing in this act shall be construed to prevent any resident of this Commonwealth from making a set of plans or specifications for the *occasional or incidental erection or construction of* (1) any building or enlargement or alteration thereof intended for occupancy by himself or any person, association or corporation employing him, costing less than $10,000, where the space enclosed does not exceed 30,000 cubic feet calculated by the standards or methods recommended by the American Institute of Architects; (2) any building or enlargement or alteration thereof which is to be used for farm purposes; (3) any single family residence of any size or cost

which is to be used by such resident as his home; (4) any remodeling or alteration, regardless of cost, to existing buildings, not involving structural changes and which do not include additions costing $10,000 or more or containing an enclosed space of greater than 30,000 cubic feet calculated as aforesaid: Provided, That the author of such plans and specifications shall not receive any compensation as the author thereof." (Italics supplied.)

The queries raised by you are: First, whether the proviso "that the author of such plans and specifications shall not receive any compensation as the author thereof" applies to all four specified types; and secondly, what is meant by "occasional" or "incidental" erection or construction.

"Incidental" is defined by The Century Dictionary & Encyclopedia as follows:

"Occurring, inseparably or fortuitously, in conjunction with something else, usually of greater importance; of minor importance; occasional; casual: as *incidental* expenses."

"Occasional", an adverb, is defined by The Century Dictionary & Encyclopedia to mean

"Of occasion; incidental; hence, occurring from time to time, but without regularity or system; made, happening, or recurring as opportunity requires or admits: as, an *occasional* smile . . .".

We, therefore, construe this section of the act to mean that a resident of this Commonwealth may occasionally, even if "occurring from time to time, but without regularity or system . . . or recurring as opportunity requires or admits", make a set of plans or specifications under any of the four specific types, providing that the author of these plans does not receive any compensation. All four enumerated types under this section of the act must be included under this limitation, inasmuch as no provision is made for exceptions or exclusions.

We are of the opinion, therefore, and you are advised, that:

1. The State Board of Examiners of Architects, in the administration of its duties, is restricted to the expenditure of that amount of money allocated to it by the Department of Public Instruction for the biennium; and that it cannot incur expenses which exceed this allocation, even though such expenses did not exceed the sum received by the Commonwealth in fees for examinations, registrations, and renewals; and

2. Any resident of this Commonwealth may prepare a set of plans or specifications for the occasional or incidental erection or construction of any of the four specified types of building or construction as are set forth in section 13 of the Act of July 12, 1919, P. L. 933, as amended by the Act of June 27, 1939, P. L. 1188, provided that the author of such plans and specifications shall not receive any compensation as the author thereof.